UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE ANN TEWKSBURY,

    Plaintiff,

v.                                            Case No. 1:13-cv-440
                                            Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                    /

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

        Plaintiff was born on November 29, 1958 (AR 198).[1] She alleged a disability onset date of December 27, 2007 (AR 198). Plaintiff graduated from high school and had previous employment as a receptionist, sales clerk and office clerk (AR 49, 202). Plaintiff identified her disabling conditions as depression, anxiety, chronic pain, arthritis, backaches, headaches and mental illness (AR 201). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 30, 2012 (AR 39-51). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

>The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 27, 2007 and that she met the insured status requirements of the Social Security Act through December 31, 2012 (AR 41). At the second step, the ALJ found that plaintiff had the following severe impairments: degenerative joint disease of the bilateral knees and shoulders;

fibromyalgia; major depressive disorder; and generalized anxiety disorder (AR 41). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 42). Specifically, plaintiff did not meet the requirements of Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (affective disorders), 12.06 (anxiety related disorders), or 12.07 (somatoform disorders) (AR 42-44).

The ALJ decided at the fourth step that plaintiff:

> . . . has the residual functional capacity to perform light work, which is unskilled as defined in 20 CFR 404.1567(b) except she can only occasionally stoop, kneel, crouch, or crawl. She can never climb ladders/ropes/scaffolds and can only occasionally climb ramps or stairs. She should sit or stand at will, provided she not be off task more than 10% of the work period. She should avoid exposure to hazardous conditions. She can frequently handle with the upper extremities.

(AR 44). The ALJ also found that plaintiff was unable to perform any of her past relevant work (AR 49).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the regional economy (defined as the State of Michigan) (AR 50). Specifically, plaintiff could perform the following: assembly of small products (1,000 jobs locally and 100,000 jobs nationally); garment sorter (900 jobs locally and 80,000 jobs nationally); and delivery routing clerk (1,100 jobs locally and 100,000 jobs nationally) (AR 50). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 27, 2007 (the alleged onset date) through November 30, 2012 (the date of the decision) (AR 50-51).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

### A. The ALJ erred in evaluating plaintiff's impairment of fibromyalgia.

Plaintiff contends that the ALJ "never evaluates [p]laintiff's fibromyalgia and simply states that her limitations are 'reflected in the residual functional capacity determination.'" Plaintiff's Brief at p. 12 (citing AR 45). Plaintiff's contention is without merit. As an initial matter, neither plaintiff's disability report nor her function report identified fibromyalgia as a disabling condition (AR 200-08). Nevertheless, the ALJ determined that plaintiff had a severe impairment of fibromyalgia (AR 41). In evaluating this impairment, the ALJ found that plaintiff's "longitudinal medical history is not necessarily consistent with her allegations of disability due to fibromyalgia and degenerative joint disease (Ex. B1F-B3F)" (AR 45). The ALJ also observed that consultative examiner, S. Tsekhanov, D.O., did not find objective support for the severity of plaintiff's reported symptoms (AR 45). Rather, Dr. Tsekhanov concluded that since plaintiff's medications controlled her physical symptoms, and she exhibited only minor to mild dysfunction in performing everyday activities, plaintiff could work an 8-hour day with changing of positions every 10 to 20 minutes (AR 45, 339-42). The ALJ concluded that, "[t]hese findings are wholly consistent with the residual functional capacity determination" and that the "[l]imitations imposed by fibromyalgia and degenerative joint disease, moreover, are reflected in the residual functional capacity determination" (AR 45).

Plaintiff contends that the ALJ failed to properly evaluate her claim under Social Security Ruling (SSR) 12-2p entitled "Titles II and XVI: Evaluation of Fibromyalgia".[2] However, her claim is without substance. Plaintiff neither addresses the requirements of SSR 12-2p, nor how the ALJ failed to meet those requirements. On the contrary, the ALJ followed SSR 12-2p at § VI.D., which states that when considering the RFC for a person with fibromyalgia ("FM"), " we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" Although plaintiff has presented no evidence of a diagnosis of fibromyalgia, the ALJ noted that an unidentified doctor maintained that plaintiff had more than 11 out of 18 trigger points of pain that favored fibromyalgia (AR 47).[3] In addition, Dr. Tsekhanov observed that plaintiff "could get on and off the examination table without difficulty, walk with a normal gait, and ambulate without an assistive device (Ex. B7F; B8F/5)." (AR 47, 340, 349). The ALJ also found that plaintiff's refusal to have imaging studies performed to address her pain complaints "suggested that her pain complaints were less severe than alleged (Ex. B 10F)" and that "there are no medical records demonstrating an inability to ambulate effectively, or that her conditions interfere seriously with her ability to independently initiate, sustain, or complete activities" (AR 47).

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006). *See* SSR 12-2p, 2012 WL 3104869.

[3] The ALJ does not cite any record to support the finding of fibromyalgia. At the administrative hearing, plaintiff's counsel directed the ALJ to Exhibits 6F and 8F at p. 6 as evidence of fibromyalgia (AR 67). Neither of these exhibits include a diagnosis of fibromyalgia. Exhibit 6F is a "psychiatric/psychological medical report" in which plaintiff reported to a psychologist that she was being treated for fibromyalgia (AR 332). Exhibit 8F reflects that plaintiff identified an "active case of fibromylagia" in her medical history (AR 348, 350).

In addition, the ALJ addressed plaintiff's credibility, which is particularly relevant in fibromyalgia claims, in which there is an absence of sufficient objective medical evidence to support the claim. *See Blair v. Commissioner of Social Security*, 430 Fed. Appx. 426, 430 (6th Cir. 2011). *See*, *generally*, *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[t]here are no laboratory tests for the presence or severity of fibromyalgia"). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ evaluated plaintiff's credibility in pertinent part as follows:

> In assessing the claimant's credibility, the claimant's life style is not consistent with that of a person who is totally disabled. As far as her activities of

>daily living, the claimant reported she could perform household chores, care for her sick mother, prepare simple meals, shop for groceries, drive a car, and participate in online college classes. Further, she reported that she enjoyed watching television, gardening, and walking her dogs. Although she alleged difficulty concentrating and remembering, she could use a computer and talk on the telephone. These facts raise questions regarding the overall severity of the conditions as well as the claimant's subjective nature of her allegations. Finally, there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairment(s).

(AR 48). In addition, the ALJ noted that plaintiff made inconsistent statements with respect to her work history (i.e., while plaintiff maintained that she stopped working in December 2007 due to her disabling condition, plaintiff testified that she was actually laid off by her employer "due to lack of work") and that given her long term receipt of unemployment benefits, plaintiff was less than fully credible with either the Social Security Administration or the State of Michigan (i.e., "if the claimant were truly unable to work at any job, she would then no longer be eligible for unemployment benefits") (AR 48, 62). Based on this record, there is no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. This claim of error will be denied.

### B. The substantial evidence on the record demonstrates that controlling weight was not given to the plaintiff's treating sources.

Plaintiff contends that the ALJ did not point to evidence in the record to dispute the opinions of her treating psychologist, Barbara Kennison, Ph.D., who "determined that [p]laintiff suffers from serious complications [sic] depression including marked limitations and extreme inability to function" Plaintiff's Brief at p. 14 (citing AR 360-65). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. "The treating physician doctrine is based on the assumption that a medical

professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Kennison's opinion is set forth in a form entitled "Medical statement concerning depression for Social Security disability claim" which the doctor completed on May 8, 2012 (AR 360-65). In this form, Dr. Kennison indicated that due to her depression, plaintiff had "marked limitations" in two areas: "[r]estrictions of activities of daily living;" and "[d]ifficulty in maintaining social functioning" [sic]" (AR 360, 362). Dr. Kennison also circled two limitations as "present":

" deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work place settings or elsewhere)"; and "[r]epeated [e]pisodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from the situation or experience exacerbation of signs or symptoms (which may include deterioration of adaptive functioning)" (AR 360, 362-63). With respect to the latter limitation, Dr. Kennison noted that plaintiff was "unable to hold a job and has great difficulty @ home" (AR 363). The doctor checked boxes on the form indicating that plaintiff was "extremely impaired" in a number of work-related activities such as the ability: to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances; to work in coordination with and in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to respond appropriately to changes in the work setting; and, to set realistic goals or make plans independently of others (AR 363-64).[4] In her comments, Dr. Kennison stated that plaintiff "not employed at this time and given limitations checked it is uncertain when she could work outside the home" (AR 364).

The ALJ addressed plaintiff's mental impairments by reviewing a consultative examination performed in September 2011 by David Cashbaugh, M.A., a limited licensed psychologist (AR 46).[5] The examination arose from plaintiff's complaints of depression, suicidal thoughts, and whole body pain (AR 46). Mr. Cashbaugh made the following observations:

---

[4] The Court notes that the form in which Dr. Kennison circled and checked responses did not define terms such as "marked limitations" or "extremely impaired."

[5] The ALJ erroneously referred to the examiner as "D. Cashbaugh, Ph.D." and "Dr. Cashbaugh" (AR 46, 337).

plaintiff's speech was clear and understandable; she denied hallucinations or delusions; she did not appear to be physically uncomfortable; she was oriented times three; and she could repeat five numbers forwards and four numbers backwards (AR 46). The examiner observed that plaintiff seemed very "mellow dramatic" [sic] (AR 46). He offered the claimant a guarded-fair prognosis and felt that she could manage her own benefit funds without difficulty (AR 46, 332-38).

The ALJ traced plaintiff's subsequent medical history as follows:

> In January of 2012, the claimant sought in voluntary [sic] inpatient treatment secondary to suicide attempt by prescription overdose, which appeared exacerbated by her mother's cancer and family issues, mood instability, medication non-compliance, and cannabis dependence (Ex. 8F/l/2). In a discharge summary, R. Mahabir, D.O. diagnosed the claimant with major depressive disorder, recurrent, severe without psychotic features; generalized anxiety disorder, post-traumatic stress disorder (PTSD), cannabis dependence, nicotine dependence, and issued a GAF score of 50 (Ex. B8F/13). However, her symptoms improved at discharge. In fact, she denied suicidal ideation or sleep issues. She denied feeling anxious or depressed. Her doctor reported that her behavior as [sic] *stable and uneventful* with medication compliance. She reported no medication side effects. Her affect was appropriate, full range, and congruent with mood. Her thinking was logical and thought content appropriate. Her short-term memory was intact and she appeared fully oriented. Her cognitive functioning was normal and her judgment fair. She appeared alert and her gait was good. Her doctor recommended supportive therapy and medication compliance. She treated with prescription Cymbalta, Tegretol, and Ambien, which was relatively effective in controlling her symptoms (Ex. B8F/14).
>
> The claimant sought follow-up with B. Kennison, Ph.D. status-post suicide attempt. On March 20, 2012, Dr. Kennison reported *improvement* in the level of her anxiety and depression with treatment compliance. She recommended continued supportive therapy, good self-care practices, and healthy eating, exercise and regular sleep (Ex. B 11F/20). In April of 2012, the claimant reported feeling "better" emotionally with prescription Effexor and her therapist maintained that her emotional status was *improving* (Ex. B11F/16). Her mood appeared more stable in May of 2012 (Ex. B11F/10). However, in September of 2012, she reported a high level of anxiety and sadness, largely due to family issues and financial problems (Ex. B11F/1). Her therapist recommended treatment compliance, and keeping busy with exercise, walking her dogs, reading, or doing creative projects.

(AR 46).

The ALJ also observed that plaintiff's mental health care providers' examination findings "have generally been unremarkable" (AR 47).

> Although her mood sometimes appeared depressed and anxious, her providers often found that it was stable, better, or improved with medication compliance. Further, her affect was often appropriate and her short-term memory intact. Her cognitive functioning was normal and her judgment fair. Her doctor often found that family and money issues exacerbated her symptoms (Ex. B8F/14; B 11F/16/20).

(AR 48).

After reviewing the medical record, the ALJ gave limited weight to Dr. Kennison's opinion that plaintiff suffered from marked limitations and extreme impairments and that plaintiff was unemployable, stating that Dr. Kennison's opinion "is based on a limited treating history, and her findings are not consistent with the medical evidence of record" (AR 49). Based on the medical record and the ALJ's review of that record, the Court concludes that the ALJ gave good reasons for allowing only limited weight to Dr. Kennison's opinion that plaintiff suffered from extreme, disabling impairments. According, plaintiff's claim of error will be denied.

**C. The residual functional capacity (RFC) determination by the ALJ did not accurately portray plaintiff's physical and mental impairments and nonexertional limitations.**

Plaintiff contends that the ALJ erred because (1) the ALJ "never accounts for any nonexertional limitations consistent with his severe impairment findings or his finding that plaintiff has moderate limitations in concentration persistence, or pace," and (2) "the ALJ does not account for exertional limitations claimant suffers from her degenerative disc disease of the bilateral knees and shoulders as well as her severe pain from the fibromyalgia." Plaintiff's Brief at p. 15. This contention is not persuasive.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992).

The ALJ accounted for plaintiff's nonexertional limitations due to her mental impairments by restricting her to unskilled work (AR 44).[6] By definition, unskilled work incorporates some non-exertional components, consisting of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Such work involves simple and routine tasks. *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000). *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment). The ALJ accounted for the balance of plaintiff's nonexertional limitations by restricting her work which: involved only occasional stooping, kneeling, crouching, or crawling; never involved climbing ladders/ropes/scaffolds and only occasionally involved climbing ramps or stairs; avoided exposure to hazardous conditions; and

---

[6] Nonexertional limitations imposed by impairments and related symptoms, such as pain, include: "difficulty functioning because you are nervous, anxious, or depressed;" "difficulty maintaining attention or concentrating;" and "difficulty understanding or remembering detailed instructions." 20 C.F.R. § 404.1569a(c)(i)-(iii).

involved only frequent handling with the upper extremities." [7] Finally, the ALJ accounted for plaintiff's exertional limitations and her combined exertional and nonexertional limitations (such as pain) by restricting her to light work (i.e., lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, 20 C.F.R. § 404.1568(b)), and to jobs which allowed her to sit or stand at will, provided she not be off task more than 10% of the work period (AR 44).[8] The vocational expert (VE) identified 3,000 unskilled, local jobs which could be performed by a person with plaintiff's RFC (AR 93-95). Accordingly, this claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 15, 2014                          /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge

---

[7] Nonexertional limitations also include: environmental limitations, i.e., "difficulty tolerating some physical feature(s) of certain work settings" such as the inability to tolerate dust or fumes; and "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(v)-(vi).

[8] Under the regulations, exertional limitations imposed by impairments and symptoms such as pain "affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). Finally, combined exertional and nonexertional limitations "affect your ability to meet both the strength and demands of jobs other than strength demands." *Id.* at § 404.1569a(d)